DeMetre, Appellant, *v.* Savas et al., Appellees.

(No. 22567—Decided February 9, 1953.)

*Messrs. Davis, Davis & Handelman,* for appellant.
*Mr. A. T. Klein, Mr. E. R. Vanek* and *Mr. S. A. Zona,* for appellees.

Hurd, J.  Plaintiff, appellant herein, appealed from a judgment of the Court of Common Pleas of Cuyahoga County, entered upon a directed verdict for defendant at the close of all the evidence.  The defendant, Katherine Savas, and others, owned and operated

a restaurant business known as "Kate's Restaurant" located on the ground floor of the Public Square Building in the city of Cleveland. The plaintiff, describing himself as a "business broker," brought the action for a broker's commission, alleging that he was the procuring cause of the sale of defendant's business to one James Kaim.

Plaintiff was not licensed as a real estate broker under Chapter 27a of Title II, Part Second of the General Code pertaining to real estate brokers, being Section 6373-25 *et seq.* Construing the evidence favorably to the plaintiff, as the trial court was obliged to do for the purpose of the motion to direct a verdict, it appears that the buyer was willing to purchase the restaurant business as a going concern, provided he could obtain either a new lease of the premises or a validization and assignment of the old lease which had about eight years to run and which it was claimed had become invalidated by reason of foreclosure and receivership of the Public Square Building. For this purpose the buyer engaged lawyers who were successful in arranging for the assignment of the existing lease upon which the sale was conditioned. The agreement of sale was evidenced by a written contract drawn and prepared by defendant's counsel without the knowledge of plaintiff. It provides as the sole purchase price for the fixtures, equipment, stock and good will, including the lease, the sum of $27,000. Paragraph 6 of the contract of sale provides for the assignment of the lease and contains the written consent thereto by the lessor or its duly authorized agent.

Paragraph 11 of the agreement provides in full as follows:

"11. It is mutually agreed that consent of the lessor of the premises mentioned herein, shall be evidenced by a separate instrument in writing, *that in the event*

*the lessor* of the premises mentioned herein *will not consent in writing to the assignment of the lease to the premises* herein described, *this agreement shall be declared null and void* and the deposit made by the buyer herein shall be returned to him.'' (Emphasis added.)

Plaintiff testified that he had procured James Kaim as buyer for the business. In this he was supported by the testimony of several witnesses, including the buyer who was called by defendants as their witness. Plaintiff testified further that he did not take part in the arrangement for the assignment of the lease or assist in any way in the preparation or completion of the written agreement of sale, contending that he was unaware that such an agreement was executed and that the purpose of the defendant in withholding such information from him at the time was to deprive him of his rightful claim to a commission.

At the conclusion of all the evidence and after final arguments of counsel, but before submission of the case to the jury, the trial court directed a verdict for defendant solely upon the ground that plaintiff was barred from recovery because he was not licensed under the Real Estate Brokers' License Act, which by its terms includes leaseholds as real estate.

Plaintiff complains of error of the court in ruling that plaintiff was subject to the Real Estate Brokers' License Act as a matter of law and in directing a verdict on that ground, as there were issues of fact to be decided by the jury.

The primary question presented is whether a business broker who sells a going business, the sale of which is conditioned upon the transfer and assignment of a leasehold interest in the premises, becomes subject to the Real Estate Brokers' License Act and, particularly, Sections 6373-25 and 6373-48, General Code.

It is crystal clear that no right of action shall accrue to any person for the collection of a brokerage commission in the sale, transfer or leasing of an interest in real estate, unless at the time the claimed right of action arose such person was licensed as a real estate broker pursuant to the provisions of Sections 6373-25 to 6373-51, General Code. Such an action is barred specifically by the terms of Section 6373-48, General Code, which reads, in part, as follows:

"Section 6373-48 [Right of action not to accrue without proof of license]. No right of action shall accrue to any person * * * for the collection of compensation for the performance of the acts mentioned in Section 6373-25 of the General Code without alleging and proving that such person * * * was duly licensed as a real estate broker * * * at the time the cause of action arose."

Section 6373-26, General Code, in substance, provides that no person shall act as a real estate broker without being licensed, and Section 6373-49 provides for a maximum penalty of $1,000 fine and imprisonment in the county jail for one year, or both, for violation of Section 6373-26, General Code.

Section 6373-25, General Code, as amended, effective September 1, 1939, which defines the term, "Real Estate Broker," is a very broad and comprehensive enactment. In the interest of brevity, we quote only pertinent parts thereof as follows:

"The term 'real estate broker' shall include *any person* * * * *who for another and for a fee,* commission, or other valuable consideration, or who with the intention or in the expectation or upon the promise of receiving or collecting a fee, commission or other valuable consideration, sells, exchanges, purchases, *rents* or *leases,* or *negotiates* the sale, exchange, purchase, *rental,* or *leasing* of, or offers, or attempts, or agrees

to negotiate the sale, exchange, purchase, *rental,* or *leasing* of, or lists or offers or attempts or agrees to list, * * * any real estate, or the improvements thereon * * * or * * * assists or directs in the procuring of prospects or the negotiation or closing of any transaction * * * which does or is calculated to result in the sale, exchange, *leasing* or *renting* of *any real estate* * * *. "* * * *

"*Any person* * * * *who, for another, in consideration of compensation,* by fee, commission, salary, or otherwise, or with the intention or in the expectation or upon the promise of receiving or collecting a fee, does, offers or attempts or agrees to do, engages in, or offers or attempts or agrees to engage in, *either directly or indirectly, any single act or transaction contained in the definition of a real estate broker in this act, whether said act be an incidental part of a transaction,* or the entire transaction, shall be constituted a real estate broker * * * within the meaning of this act." (Emphasis added.)

It must be conceded that a leasehold is within the meaning of the act, as the second full paragraph of Section 6373-25, General Code, provides:

"The term *'real estate' shall include leaseholds* as well as any and every interest or estate in land, whether corporeal or incorporeal, whether freehold or nonfreehold, and whether said land is situated in this state or elsewhere." (Emphasis added.)

In considering the question here presented, we find no Ohio cases determining the precise issue of whether the licensing requirement for real estate brokers should be construed as applicable to the sale of a going business where the agreement of sale is conditioned upon the written consent of the lessor to an assignment of a lease of the premises to the buyer.

The opinions rendered by courts of other jurisdic-

tions are in conflict, due partly to obvious differences in the statutory provisions of the various states where licensing acts have been enacted and partly to differences of concept as to the scope and operation of the various statutes.

Counsel for plaintiff argue that the Real Estate Brokers' License Act does not apply to the sale of a going business even though a lease is included in the transaction. They cite as the leading case on the subject *Weingast* v. *Rialto Pastry Shop, Inc.*, 243 N. Y., 113, 152 N. E., 693, where the court held that Article 12-A of the Real Property Law of New York State did not apply to one who exercises the calling of selling or exchanging businesses as going concerns, although, as part of the goodwill, such sales may include the leases of stores or buildings. That court further held that "as failure to procure a license is made a crime, the statute must not be extended by implication," and cited with approval *Reichardt* v. *Hill*, 236 F., 817, where a similar ordinance was under discussion.

An examination of the New York statute defining the term, "real estate broker," as quoted in that case shows that it is the same in substance as our Ohio Statute prior to the amendment of Section 6373-25, General Code. (118 Ohio Laws, 489, effective September 1, 1939.) Had the Ohio statute not been amended as herein set forth, the *Weingast case* would be pursuasive authority to consider in deciding the instant case. However, since the amendment of the Ohio statute, the *Weingast case* must be distinguished because of the substantial changes in the provisions of the Ohio license law making it broader and more comprehensive in scope and operation than the New York law there considered. Furthermore, under the present Ohio act we are not confronted with the proposition of extending by implication a statute, the violation of which is

made a crime, for the reason that by its express terms it is extended to include any single act or transaction, whether such act be an incidental part of or the entire transaction.

A decision directly contrary to the *Weingast case* was rendered in *Nittler* v. *Continental Casualty Co.*, 94 Cal. App., 498, 271 P., 553, rehearing denied, 272 P., 309, where the Real Estate Brokers' Act was substantially the same as the New York act. It was there held that the procurement of a sale by an unlicensed broker of a gasoline station, store and chicken farm on leased premises was within the provisions of the act requiring a broker's license and recovery was barred.

Plaintiff cites also *Salisbury* v. *Alskog,* 144 Wash., 88, 256 P., 1030, and *Johnson* v. *Rutherford,* 32 Wash. (2d), 194, 200 P. (2d), 977. These cases are inapplicable here because the Washington courts there held a leasehold interest to be personal property rather than real property.

In *Cohen* v. *Scold,* 13 N. J. Super., 472, 80 A. (2d), 643, decided May 17, 1951, the Superior Court of New Jersey, Appellate Division, held that the sale of a restaurant business including stock, fixtures, equipment, *lease* and *goodwill* involved "an interest in realty," and that, therefore, an unlicensed broker was not entitled to commissions. Recovery was denied as a matter of law. A provision of the New Jersey statute which corresponds to a like provision of the Ohio act is as follows:

"Any single act, transaction or sale shall constitute engaging in business within the meaning of this article." Section 45:15-2, Revised Statutes of New Jersey.

While decisions of other jurisdictions may be helpful, yet, in final analysis, our decision must rest upon a reasonable construction of the applicable provisions

of the Ohio act, which appears to be more comprehensive in its terms than any comparable legislation of other states. In this case the sale upon which commission is claimed is evidenced by a written agreement definitely providing for an assignment of the lease with the written consent of the lessor by separate instrument. The agreement provides further that unless such consent is obtained the agreement shall be null and void. The lease of the premises situated on the public square of Cleveland with a period of eight years to run was a valuable asset, if not the most valuable asset, of the restaurant business being conducted there. While it formed but one element in the value of the business as a going concern, it was so valuable that the entire transaction was conditioned upon the assignment thereof to the purchaser with the approval of the lessor.

In construing the applicable provisions of the statute, we must follow the familiar cannon of construction that the words employed by the Legislature must be accepted in their plain and ordinary meaning.

As Section 6373-25, General Code, includes leaseholds within the orbit of the statute, and, as, according to the express provisions of the same section, any person who for another, in consideration of compensation, engages either directly or indirectly in *any single act or transaction* contained in the definition of real estate broker, *whether said act be an incidental transaction* or the entire transaction, shall be constituted a real estate broker, we conclude that the act is broad enough to cover the transaction involved in this case and, therefore, on the conceded facts construed most favorably to the plaintiff, we hold that he is barred from the recovery of a commission as a matter of law under Section 6373-48 and cognate provisions of the General Code.

While we base our decision upon the express provisions of the applicable statutes, we find support by analogy for our conclusions in *Stanton, Inc.,* v. *McDonald,* 147 Ohio St., 191, 70 N. E. (2d), 359, 169 A. L. R., 760, decided September 4, 1946. While the precise question here determined was not there involved, the Supreme Court had for consideration Sections 6373-25 and 6373-48, General Code, in relation to the collection of compensation for the performance of service in the rental or leasing of real estate where a real estate broker's license was issued for a particular year, but was not renewed for the following year, during which the claimed right of action arose. The first and fourth paragraphs of the syllabus are as follows:

"1. A corporation to which a real estate broker's license was issued for a particular year but which did not renew or possess such a license for the following year has no right of action for the collection of compensation for the performance of service in the rental or leasing of real estate where such claimed right of action accrued during such following year. (Section 6373-48, General Code.)"

"4. Where the General Assembly has denied a right of action to recover compensation in certain cases a court may not, in disregard of such legislation, afford relief upon the theory of money had and received."

Because we hold that plaintiff is barred from recovery as a matter of law, it follows that we cannot sustain his assignment of error based on his claim that he had no part in the arrangements and negotiations for the reinstatement and assignment of the existing lease and that this evidence presented an issue of fact for the jury. It is idle we think to claim a commission for effecting the sale in one breath and in another to deny responsibility for the negotiation of the assignment of the lease with the consent of the lessor, without which

the sale could not have been consummated. Certainly the purchase price of $27,000 was predicated in substantial measure upon the value of the assigned lease with eight years to run in a most advantageous location where the goodwill had been built up over a period of time. The Ohio statute, as we have stated, is so broad and comprehensive in its terms as to include all transactions where the transfer or assignment of a lease is a condition precedent to the consummation of a sale. To hold otherwise would be to ignore the plain provisions of the statute.

In *Stanton, Inc., v. McDonald, supra*, the Supreme Court expressly held that a court may not, in disregard of such legislation as is here applicable, afford relief on the theory of money had and received. This same principle precludes an action in assumpsit and every other method which may be employed outside of but contrary to the plain provisions of the statute.

For the reasons stated, the judgment of the Common Pleas Court is affirmed.

*Judgment affirmed.*

SKEEL, P. J., and KOVACHY, J., concur.