Rutherford, J.
It is not questioned that Everett M. Young was licensed as a real estate broker during the entire year, 1957, and that his bond, in the amount of $5,000, was properly executed and fully conforms to statutory requirements. Neither is there any question as to the obligation of Young to make payment to the plaintiff of $2,000 in trust funds wrongfully withheld, for which amount plaintiff, in a previous action, recovered judgment against Young.
The ultimate issue, upon which disagreement arises, is whether Young was acting as a real estate broker, so as to be subject to the provisions of Sections 4735.01 to 4735.23, inclusive, Revised Code, in connection with the transaction in which he received the $2,000 to be held by him in escrow.
The bond, upon which the defendant became surety for Young, was issued in accordance with the provisions of Section 4735.12, Revised Code, which provides in part:
‘ ‘ The bond * * * shall be conditioned upon the faithful observance of Sections 4735.01 to 4735.23, inclusive, of the Revised Code, and shall also indemnify any person who may be damaged by a failure on the part of the applicant for a real estate broker’s license to conduct his business in accordance with the requirements of such sections. Any person claiming to have been damaged by any misrepresentation or fraud on the part of a real estate broker or by reason of the violation of the terms of Sections 4735.01 to 4735.23, inclusive, of the Revised Code, may maintain an action at law against the broker making such representations or perpetrating such fraud or violating such sections, and may join as parties defendant the sureties on the bonds provided for in this section. Such *306 bonds shall be in the form prescribed by the board and approved by it.”
Section 4735.01, Revised Code, defines the terms, “real estate broker,” “real estate” and “real estate salesman.” Pertinent parts thereof are as follows:
“(A)'‘Real estate broker’ includes any person * * * who for another and for a fee, commission, or other valuable consideration, or who with the intention or in the expectation or upon the promise of receiving or collecting a fee, commission or other valuable consideration, sells, exchanges, purchases, rents, or leases, or negotiates the sale, exchange, purchase, rental, or leasing of, or offers or attempts or agrees to negotiate the sale, exchange, purchase, rental, or leasing of, or lists or offers or attempts or agrees to list * * * any real estate, or the improvements thereon; * * * or who advertises or holds himself, itself, or themselves out as engaged in the business of selling, exchanging, purchasing, renting, or leasing real estate, or assists or directs in the procuring of prospects or the negotiation or closing of any transaction, * * * which does or is calculated to result in the sale, exchange, leasing, or renting of any real estate. * * *
“(B) ‘Real estate’ includes leaseholds as well as any and every interest or estate in land, whether corporeal or incorporeal, whether freehold or nonfreehold, and whether said land is situated in this state or elsewhere.
“(C) ‘Real estate salesman’ * * *
“Any person * * * who for another, in consideration of compensation, by fee, commission, salary, or otherwise, or with the intention or in the expectation or upon the promise of receiving or collecting a fee, does, offers or attempts or agrees to engage in, any single act or transaction contained in the definition of a real estate broker in this section, whether said act he an incidental part of a transaction, or the entire transaction, shall be constituted a real estate broker or real estate salesman under Sections 4735.01 to 4735.23, inclusive, of the Revised Code.” (Emphasis added.)
Several cases from other jurisdictions are cited in an opinion of the Court of Appeals for Cuyahoga County, in the case of DeMetre v. Savas, 93 Ohio App., 367, but, as stated *307 therein, those cases in final analysis are of little assistance due to the comprehensiveness of Section 4735.01, Revised Code* which by its express terms is intended to include any single act or transaction, whether such act be an incidental part of or the entire transaction. In final analysis, our decision must rest upon a reasonable construction of the applicable provisions of the Ohio statute.
In the instant case, there were two agreements, both negotiated by Young, between Divito and Holland. Together, they constituted continuing negotiations between the same parties to effect the sale of the business known as the ‘ ‘ Trading Post, ’ ’ located at 246 E. Gay Street, fully equipped with a C-2 license. As specified therein, the purchase agreement provided that all meters, lighting fixtures, etc., belonging to the grantor now in such premises, shall go to the grantee, that rentals and interest shall be adjusted to date of delivery of deed, and that insurance policies shall be adjusted to date of delivery of deed. The agreement of sale refers to delivery of a deed from which transfer of an interest in real estate is inferred, although the exact nature of the interest to be transferred was not specified. The agreement also calls for the business to be fully equipped with a C-2 permit, and such permits are issued only for the place described in the permit, which in this case means that the business could be carried on only at 246 E. Gay Street. See Section 4303.27, Revised Code.
Prom the evidence it is clear that this was the sale of a going business to be continued at the designated location for which the C-2 permit, with which it was specified as being-equipped, had been issued. This sale was dependent upon the purchaser acquiring- through the seller, who was to give possession, at least the right of occupancy of the real estate. We conclude, as a matter of law, that the purchase agreement in this instance was a transaction calculated to result in the sale, exchange, leasing or renting- of the real estate within the meaning of Section 4735.01, Revised Code.
When the management agreement was entered into, the purchase agreement was still pending, the C-2 license not having- been transferred and possession not having been given or payment made in full. The management agreement was but *308 an interim agreement entered into, as a part of continuing negotiations, pending carrying out of the terms of the purchase agreement, and with the apparent purpose of enabling Divito to operate the Trading Post as manager while the C-2 license was still in the name of Holland, but providing the same compensation and advantages of profit or loss for Dorothy Divito as if she had in fact become the owner.
We find only a single transaction comprised of the purchase agreement and a supplemental interim management agreement, all negotiated by Young with the expectation of receiving a fee and calculated, as a part thereof, to result in the sale, exchange, lease or rental of real estate.
The clear legislative intent of Section 4735.01, Revised Code, was that if, in a single transaction, such entire transaction or an incidental part thereof results or is calculated to result in the sale, exchange, leasing or renting of any real estate, then the person negotiating such transaction for another, for a fee, and not being exempted under the provisions of that section, is constituted a real estate broker or real estate salesman under Sections 4735.01 to 4735.23, inclusive, Revised Code.
While acting as a real estate broker within the meaning of the statute, Young became subject to the provisions of Sections 4735.01 to 4735.23, inclusive, Revised Code. Section 4735.18, Revised Code, authorizes the suspension or revocation of a license or the refusal to renew any license at any time where the licensee, in performing or attempting to perform any act as a real estate broker, is guilty, inter alia, of “failure within a reasonable time to account for or to remit any money coming into his possession which belongs to others.”
After Young accepted the $2,000 in escrow as a part of the negotiations in a transaction in which he was acting as real estate broker, the money placed in his hands became a trust fund, placing upon him the obligation of a fiduciary. The plaintiff herein, who placed said monies in Young’s hands, has recovered a judgment against him, which remains unsatisfied because of his failure to remit money coming into his possession which belongs to plaintiff. He has failed to conduct his business in accordance with the requirements of Sections 4735.01 to *309 4735.23, inclusive, Revised Code, and the defendant, as surety-on his real estate broker’s bond conditioned upon his observance of such sections, becomes liable, within the limits of the bond, to indemnify- plaintiff for her loss.
Accordingly, the judgments of the Court of Appeals and of the Court of the Common Pleas, being contrary to law, are reversed, and final judgment is rendered in favor of Dorothy Divito against the Buckeye Union Casualty Company, the surety on Everett M. Young’s bond, in the sum of $2,000, together with interest at 6 per cent per annum from December 16, 1958, the date plaintiff obtained judgment against Everett M. Young, which judgment is unsatisfied.

Judgment reversed and final judgment for appellant.

Taut, C. J., Zimmerman, Matthias, Grieeith, Herbert and Gibson, JJ., concur.
Ruthereord, J., of the Fifth Appellate District, sitting by designation in the place and stead of O’Neill, J.